# UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF TENNESSEE
# NASHVILLE DIVISION

| | | |
|---|---|---|
| MAX DAEE and TONI DAEE, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 3:13-cv-1332 |
| | ) | Judge Aleta A. Trauger |
| v. | ) | |
| | ) | |
| JP MORGAN CHASE BANK, N.A., | ) | |
| | ) | |
| Defendant, | ) | |

## MEMORANDUM & ORDER

In advance of the discovery deadline, the defendant has filed a Motion for Summary Judgment (Docket No. 15), to which the plaintiffs have filed a Response in opposition with an accompanying request for discovery with a supporting affidavit under Rule 56(d) (Docket No. 18), the defendant has filed a Reply (Docket No. 19), and the plaintiffs filed a Sur-Reply (Docket No. 22). For the reasons stated herein, the motion will be denied without prejudice.

## BACKGROUND

### I. Procedural History and Asserted Facts

This case concerns efforts by the defendant, JP Morgan Chase Bank, N.A. ("Chase"), to collect on two mortgage loans on which the plaintiffs defaulted and to foreclose on the plaintiffs' properties. In support of its motion, Chase has filed the Affidavit of John R. Wingo (Docket No. 15, Ex. 1), Chase's counsel, who attaches what purports to be "the loan file relating to each of Plaintiffs' loans[.]" Wingo avers that Chase provided the loan file to him and that he made it

1

available to the plaintiffs for inspection. The record does not contain an affidavit from a knowledgeable Chase official.[1]

Briefly, on December 8, 1998, the plaintiffs executed two Adjustable Rate Notes in favor of Chase (the "Notes") and, as security for the Notes, executed Deeds of Trust in favor of Chase (the "Deeds") relating to two properties that the plaintiffs owned in Hendersonville, Tennessee (the "Properties").[2] The Notes state that the plaintiffs "understand that the Lender may transfer the Note;" the Deeds state that "[t]he Note or partial interest in the Note (together with this security instrument) may be sold one or more times without prior notice to the borrower."

On December 17, 1998, three Assistant Treasurers for Chase executed an Assignment of Mortgage or Deed of Trust relative to each Property (the "Assignments") (*See* Docket No. 1, Ex. 1, State Court Complaint).[3] For nominal consideration, the Assignments convey to Citibank "all of [Chase's] rights, title and interest, as holder hereof, in and to the following described lien in the form of a mortgage or deed of trust, the property therein described and the indebtedness thereby secured" – referring to both Properties – "[t]ogether with the note or obligation described in said lien, endorsed to the Assignee this date, and all moneys due and to become due thereon, with interest." The Assignments also state that "[t]he Assignor hereby constitutes and appoints said Assignee its attorney irrevocable to collect and receive said debt, and to foreclose, enforce,

---

[1] *Compare, e.g.*, *Chapman v. Bank of Am.*, 2012 WL 4090895, at *2 (M.D. Tenn. Sept. 17, 2012) (affidavit from Bank of America's Assistant Vice President stating that she was familiar with company's books and records, was authorized to make the affidavit, and could attest that each fact stated therein was true and correct based on firsthand knowledge or upon information obtained from documents generated and maintained in the ordinary course of business).

[2] The transaction was part of a refinancing of their two rental homes.

[3] The defendants do not appear to the dispute the authenticity of the Assignments attached to the Complaint. For purposes of its analysis, the court will therefore consider the Assignments.

and satisfy said lien the same as it might or could have done were these presents not executed[.]"
For reasons that are not clear, the Assignments were not recorded until May 22, 2000.

On an unspecified date (perhaps in connection with the Assignments), an Assistant Treasurer for Chase affixed a signed stamp to each Note, which states as follows: "

> PAY TO THE ORDER OF
> Citibank, N.A., as trustee
> WITHOUT RECOURSE
> Chase Manhattan Mortgage Corporation

On another unspecified date, a Vice President of Chase purported to sign an "Allonge" to each Note (the "Allonges"). Each Allonge purports to be an "[a]llonge to one certain Mortgage Note dated 12/3/1998 in favor of Chase Manhattan Mortgage Corporation, executed by [one or both plaintiffs]." The Allonges state: "Pay to order of: JPMorgan Chase Bank, N.A. [space] Without recourse." The Allonges identify the "Seller" of each Allonge as "JP Morgan Chase Bank, N.A. Attorney in Fact for Citibank National Association as Trustee." The limited record contains no evidence that Chase was authorized to act as Citibank's attorney in fact in connection with this purported transaction. The record contains only a representation by Chase's outside counsel that Chase provided this loan file to him. There is no authenticating testimony from a knowledgeable Chase official about the authenticity of the Allonges, the date on which they were signed, or the circumstances under which they were allegedly executed. Essentially, the court is left with unauthenticated, undated Allonges that, at most, indicate that Chase officials purported to transfer Citibank's rights back to Chase. The record also contains no records from Citibank about Citibank's interests in these notes, other than the Assignments.

**II. The Parties' Positions Concerning Chase's Motion**

It appears that two relevant transactions purportedly took place: (1) Assignments from Chase to Citibank with associated endorsements of the Notes, and (2) endorsements of the Notes from Citibank back to Chase, which is now in physical possession of the Notes.

In its opening brief, Chase's initial position was that the initial Assignments themselves are irrelevant because Chase is now a valid "holder" of the Notes under Tennessee law, which entitles Chase to enforce the Notes. After the plaintiffs' brief pointed out some legal and factual holes in Chase's initial argument (as explained herein), Chase pivoted in its Reply, contending (for the first time) that (1) the plaintiffs lack standing to challenge the Allonges, and (2) Chase is entitled to enforce the Notes as a "transferee," regardless of whether it is a "holder" of the Notes. In a Sur-Reply, the plaintiffs argue that they do have standing to challenge the Allonges because they face a risk of double-liability (*i.e.*, prejudice) and that Chase has not made a requisite showing that it is a "transferee." The plaintiffs argue, with the requisite supporting affidavit under Rule 54(d), that further discovery is required. During the pendency of Chase's motion, the parties agreed to continue with discovery, despite the pending Rule 56 motion. (Docket No. 23.) Subject to a negotiated and approved extension, fact discovery is set to close on November 3, 2014. (*See* Docket No. 24.)

## ANALYSIS

Untangling the interests at issue implicates Tennessee's Uniform Commercial Code provisions relating to negotiable instruments. Chase makes essentially three arguments: (1) Chase is a "holder" of the Notes under Tenn. Code Ann. § 47-1-201(b)(21)(A), thereby entitling Chase to enforce them; (2) even if Chase is not a "holder" of the Notes under that provision, it is a valid "transferee" of the Notes under Tenn. Code Ann. § 47-3-203; and (3) the plaintiffs lack standing to challenge the "assignment" of the Notes from Citibank back to Chase.

4

## I. Chase's Status as a Holder

A person is the "holder" of a negotiable instrument if (1) the person is in possession of the instrument, and (2) the instrument is either (a) payable to the bearer, or (b) payable to an identified person that is the person in possession. Tenn. Code Ann. § 47-1-201(b)(21)(A). Thus, negotiation of an instrument that is payable to a specific person requires (1) transfer of possession, and (2) endorsement by the holder. *See id.* § 47-3-201(b).[4] As to the second element, there are two types of endorsements that may be relevant here: "special endorsements" and "anomalous endorsements." A special endorsement occurs when a holder of an instrument endorses it and the endorsement identifies a specific person to whom the instrument is payable. *Id.* § 47-3-205(a). An anomalous endorsement occurs when a person who is not the holder of the instrument makes the endorsement. *Id.* § 47-3-205(d). Unlike a special endorsement, an anomalous endorsement "does not affect the manner in which the instrument may be negotiated." *Id.*

Here, the parties dispute whether the purported endorsements from Citibank back to Chase constituted special endorsements or anomalous endorsements. Their dispute turns on whether Chase officials were in fact authorized to act as "attorneys in fact" for Citibank, as reflected in the text of the Allonges. Because Chase has provided no evidence that it had authorization to act on Citibank's behalf (or admitted that it cannot present such authorization), the court at this stage has no way of determining whether Citibank's endorsement was

---

[4] "If an instrument is payable to bearer, it may be negotiated by transfer of possession alone." *Id.* § 47-3-201(b). Here, not the original Note, nor the "stamps" affixed thereto, nor the Allonges affixed thereto purport to be payable to the bearer.

5

anomalous.[5] This distinction may be dispositive: if Chase is a holder of the Notes, it has an unqualified right to enforce them, regardless of whether Chase owns them or wrongfully possesses them. *See id.*, § 47-3-301.[6]

The plaintiff also points out that the record contains no information as to *when* Citibank purportedly negotiated the Notes back to Chase. Since one of Chase's legal positions is that it was entitled to initiate foreclosure proceedings because it was a holder of the Notes, it is likely material to know (at least with respect to this particular argument) whether Chase was a holder at the time it attempted to foreclose.

## II.  Chase's Status as a Transferee

Chase argues that, even if the existing evidence is insufficient to show that it was a "holder" of the Notes, Chase was nevertheless entitled to enforce the Notes as a "transferee." The relevant statute provides as follows:

(a) An instrument is transferred when it is delivered by a person other than its issuer for the purpose of giving to the person receiving the delivery the right to enforce the instrument.

(b) Transfer of an instrument, whether or not the transfer is a negotiation, vests in the transferee any right of the transferor to enforce the instrument, including

---

[5] Chase appears to assume that the initial Assignments and associated endorsements to Citibank made Citibank the "holder" of the Notes. The court observes that Chase has not actually shown that the elements of Citibank's "holder" status have been met: namely, endorsement *and* transfer of possession.

[6] The parties do not appear to dispute that a valid holder of the Notes would also be entitled to enforce the associated Deeds, which run with the note under Tennessee law. *See* Tenn. Code Ann. § 47-9-308(e); *see also Dickerson v. Regions Bank*, 2014 WL 1118076, at *8 (Tenn. Ct. App. Mar. 19, 2014) (finding that assignment of a note carries the mortgage with it) (citing *W.C. Early Co. v. Williams*, 186 S.W. 102, 103-104 (Tenn. 1916)). The holder of legal title under a mortgage can foreclose on the property in the event of a default. *Dauenhauer v. Bank of New York Mellon*, 562 F. App'x 473, 476 n.1 (6th Cir. 2014) (applying Tennessee law).

> any right as a holder in due course, but the transferee cannot acquire the rights of a holder in due course by a transfer, directly or indirectly, from a holder in due course if the transferee engaged in fraud or illegality affecting the instrument.

Tenn. Code Ann. § 47-3-203(a)-(b). As Comment 1 to this provision explains, "[t]he right to enforce an instrument and ownership of the instrument are two different concepts."[7] However, as Comment 2 explains, because the transferee's rights are derivative of the transferor's rights, those rights must proved," and "the transferee must account for possession of the unindorsed instrument by proving the transaction through which the transferee acquired it." *See also Martin v. Martin*, 755 S.W.2d 793 (Tenn. Ct. App. 1988) ("Since Appellee is not a holder, nor a holder in due course, there is no presumption of ownership in his favor under the U.C.C. The Appellee must prove his case; he must establish the terms of the instrument, his ownership of the underlying obligation, and must account for his lack of possession of the note.")[8]

Here, the plaintiffs contend that Chase has not shown that Citibank was an entity entitled to enforce the Notes at the time of the alleged transfer. The plaintiffs do not identify what proof they believe is absent from the record on this point, although they are correct that Chase seems to assume (without explanation) that Citibank was a holder in due course following the initial Assignments from Chase. At any rate, transfer requires that the transferor (Citibank) "deliver"

---

[7] For example, "[a] thief who steals a check payable to bearer becomes the holder of the check and a person entitled to enforce it, but does not become the owner of the check. If the thief transfers the check to a purchaser the transferee obtains the right to enforce the check." *Id.* at cmt. 1.

[8] In *Martin*, the appellate court found it persuasive (as had the trial court) that "all parties who might have an interest in this note have agreed as to the ownership of the Plaintiff in the note." *Id.* at 796.

7

the instrument to the transferee (Chase) "for the purpose of giving the person receiving the delivery [Chase] the right to enforce the instrument."

With respect to the existing record, the plaintiffs are at least entitled to probe whether Citibank intended to transfer to Chase the right to enforce the Notes.[9] Also, even if Chase qualified as a transferee at some point, Chase has not shown that it was necessarily a transferee during the relevant time frame. The plaintiffs are entitled to explore this issue as well.

**III.     Standing**

Chase argues that the plaintiffs lack standing to challenge assignments of their loan. Resolution of the standing issue essentially turns on whether the plaintiffs can show a risk that, absent the court's examination of the validity of the assignments, the plaintiffs face a risk of paying the same debt twice. *See Livonia Props. Holdings, LLC v. 12840-12796 Farmington Road Holdings, LLC*, 399 F. App'x 97 (6th Cir. 2010). For example, in *Livonia* (cited by the plaintiffs here), the Sixth Circuit observed that obligors may challenge an assignment where they are at risk of "having to pay the same debt twice." *Id*. at 102 (citing 6A C.J.S. *Assignments* § 132 (2010)). However, in that particular case, the Sixth Circuit found that the plaintiff was not at risk of paying the debt twice, because the record did not support a "genuine claim that [the defendant] is not the rightful owner of the loan," and because the defendant had "produced ample

---

[9] Based on cases cited by the parties, it appears that, where a transferor's intent to transfer the right to enforce is not subject to genuine dispute, the transferee is entitled to enforce the instrument. *See, e.g.*, *Piper v. Goodwin*, 20 F.3d 216 (6th Cir. 1994) (where transferor assigned assets to transferee and both understood that assignment included two notes at issue, transfer was effective despite failure to endorse); *Donaldson v. BAC Home Loans Serv., L.P.*, 813 F. Supp. 2d 885, 896 (M.D. Tenn. 2011) (where there was no genuine dispute that a valid transfer occurred, transferee was entitled to enforce note).

8

evidence that it was in possession of the note and had been assigned the rights therein *prior to the initiation of foreclosure proceedings*." *Id.* at 102 (emphasis added). [10]

Although Chase cites two unpublished district court cases for the proposition that the plaintiffs lack standing, both cases are potentially distinguishable based upon the limited factual record now before the court. *See Devoe v. Nationwide Trustee Services, Inc.*, 2012 WL 1565436, at *4 (E.D. Tenn. May 1, 2012) (addressing notes payable to bearer and citing another district court for the proposition that a "debtor cannot challenge an assignment of a debt by a creditor *unless he can show he is prejudiced by the assignment*") (emphasis added); *Chapman v. Bank of Am.*, 2012 WL 4090895 (M.D. Tenn. Sept. 17, 2012) (addressing note payable to bearer and finding that undisputed evidence showed that defendant Bank of New York Mellon was the current owner and holder of the note at issue). Here, Chase has not addressed the possibility that

---

[10] Although *Livonia* applied Michigan law, it reached this holding based on general contract principles. At any rate, the court notes that *Livonia* contains other findings that may not be helpful to the plaintiffs here. The *Livonia* court observed as follows:

> [E]ven if Livonia [the plaintiff] did have standing to contest the First Assignment and the assignment were in fact invalid, Livonia would still be unlikely to succeed on the merits. Any claim by Livonia that Farmington [the defendant] or the Trust before it was not a valid assignee of the mortgage rings hollow, as Livonia made mortgage payments directly to the Trust for years without questioning the Trust's right to receive payment. Further, when Livonia first encountered difficulties in repayment, it entered into a prenegotiation agreement with the Trust. Standing alone, the existence of that agreement makes Livonia's current questioning of the mortgage's ownership or assignments appear disingenuous, but the agreement's specific terms further weaken the claim. In the agreement, Livonia expressly acknowledged that "[t]he Loan Documents are in full force and effect and are binding on the Borrower in accordance with their terms." Even if Livonia had standing, Farmington would likely have valid equitable defenses of estoppel and laches based on Livonia's prior actions.

*Id.* at 103.

9

the plaintiffs would be prejudiced if they cannot challenge the endorsements. At a later stage, Chase will need to explain why the plaintiffs do not face the risk of paying the debt twice, a point on which the plaintiffs are entitled to discovery. If there is truly no genuine risk that Citibank will seek to enforce the Notes, the defendant's argument concerning standing may have merit.

In sum, the court is persuaded that summary judgment would be premature at this stage and that the plaintiffs are entitled to complete discovery before the court rules. In particular, the court will be interested to know whether Chase was authorized to act as attorney in fact for Citibank (or whether Citibank otherwise intended to transfer a right to enforce the Notes to Chase), when Chase became either a holder or transferee of the Notes (if that is ascertainable), and whether there is a genuine dispute that Citibank may attempt to enforce the Notes itself. Chase may ultimately be entitled to summary judgment on one or more grounds, but the plaintiffs should at least be permitted to explore these issues before the court makes a dispositive ruling.

## CONCLUSION

For the reasons stated herein, the defendant's Motion for Summary Judgment is hereby **DENIED WITHOUT PREJUDICE**.

Enter this 10th day of October 2014.

_____
ALETA A. TRAUGER
United States District Judge