| | | | |
|---|---|---|---|
| MAX DAEE and TONI DAEE, | ) | | |
| | ) | | |
| Plaintiff, | ) | **Case No. 3:13-cv-1332** | |
| | ) | **Judge Aleta A. Trauger** | |
| v. | ) | | |
| | ) | | |
| JP MORGAN CHASE BANK, N.A., | ) | | |
| | ) | | |
| Defendant. | ) | | |

## MEMORANDUM

Pending before the court are multiple motions filed by both parties. The plaintiffs have

filed a Motion for Sanctions Against Defendant for Violation of Fed. R. Civ. P. 37 (Docket No.

47) ("Motion for Sanctions"), to which the defendant has filed a Response in opposition (Docket

No. 52), and the plaintiffs have filed a Reply (Docket No. 53).[1] The plaintiffs have also filed a

Motion to Compel the Defendant to Provide Court Ordered Deposition Testimony and For

Sanctions (Docket No. 57) ("Motion to Compel"), to which the defendant has filed a Response in

opposition (Docket No. 59), and the plaintiffs have filed a Reply (Docket No. 62). The plaintiffs

have also filed a Motion for Summary Judgment (Docket No. 60) and a Motion to Withdraw

Untimely Response Argument (Docket No. 63). The defendant has filed a Second Motion for

Summary Judgment (Docket No. 54), to which the plaintiffs have filed a Response in opposition

(Docket No. 61).

For the reasons stated herein, the plaintiffs' Motion for Sanctions, Motion to Compel, and

Motion to Withdraw Untimely Response Argument will be granted, the court will award fees and

---

[1] One point of clarification: The title of the plaintiffs' Motion for Sanctions is a bit of a
misnomer. Rule 37 specifies sanctions for violations of court orders and *other* federal rules.

expenses in favor of the plaintiffs, the court will order the defendant to supplement certain interrogatory responses, and the court will deny the Rule 56 motions as moot.

## BACKGROUND

This case concerns efforts by the defendant, JP Morgan Chase Bank, N.A. ("Chase"), to collect on two mortgage loans on which the plaintiffs defaulted and to foreclose on the plaintiffs' properties. The court summarized the procedural history and certain facts (based on the record at the time) in its October 10, 2014 Memorandum & Order (Docket No. 25), familiarity with which is assumed.

### I. **Basic Facts of the Case**[2]

On December 3, 1998, the plaintiffs refinanced two rental homes in Hendersonville, Tennessee (the "Properties"). The plaintiffs executed two Adjustable Rate Notes in favor of Chase (the "Notes") and, as security for the Notes, executed Deeds of Trust in favor of Chase (the "Deeds of Trust") relating to each of the two refinanced Properties. The Notes state that the plaintiffs "understand that the Lender may transfer the Note;" the Deeds of Trust state that "[t]he Note (together with this security instrument) may be sold one or more times without prior notice to the borrower." Chase recorded the Deeds of Trust with the Sumner County Register of Deeds on December 8 and 9, 1998.

On December 17, 1998 (two weeks after executing the Notes and the Deeds of Trust), Chase endorsed over the Deeds of Trust and associated Notes to Citibank (the "Assignments").

---

[2] For reasons explained herein, the court does not reach the merits of the parties' Rule 56 motions, which are not yet fully briefed, and the court will permit the plaintiffs to complete fact discovery. The court's summary of the facts is drawn from the existing (incomplete) record and should not be construed as definitive findings by the court as to the undisputed and disputed facts of the case.

Chase Assistant Treasurers Jackie Fouche and Luis A. Martinez executed one of the Assignments; Fouche and Chase Assistant Treasurer Barbara Eddowes executed the other. Both Assignments contain identical language, stating that Chase has "endorsed" to Citibank all of its interest as "holder" of the Deeds of Trust and associated Notes. It also states that it "hereby constitutes and appoints the Assignee its attorney irrevocable to collect and receive said debt, and to foreclose, enforce, and satisfy said lien." Unlike the Deeds of Trust, the Assignments were not contemporaneously recorded. Chase recorded the stamped Assignments in the Sumner County Registry of Deeds on May 22, 2000.[3]

At an unspecified time, Chase Assistant Treasurer Amanda Munoz affixed a signed stamp to each Note, which states, in relevant part: "Pay to the order of Citibank, N.A., as trustee, WITHOUT RECOURSE. Chase Manhattan Mortgage Corporation."

On an unspecified date, Chase Vice Presidents Kayla Cooley and Tina Richard signed an allonge to each note (the "Allonges"), in which (a) Chase purported to act as "attorney in fact" for Citibank and (b) in that capacity, endorsed the Notes back to Chase "without recourse." The Allonges are undated and were not recorded. Thus, the public record continued to reflect only the initial Assignments to Citibank, but not the purported Allonges endorsing Citibank's interests back to Chase.

Although the factual record is not developed, it appears that Chase continued to service the mortgage, notwithstanding the Assignments to Citibank. In 2004 and 2008, Chase attempted

_____

[3] It is not clear from the record why Chase waited 17 months from the date of the Assignments to record them.

to "enforce the Notes" in some fashion.[4]  The plaintiffs fell behind in making payments in 2008, at which point Chase initiated foreclosure proceedings.  Chase scheduled foreclosure sales for November 4, 2013, leading to this lawsuit.

## II.  State Court Proceedings and Removal

On October 30, 2013, the plaintiffs filed this case in Sumner County Chancery Court as a "Petition to Stay Foreclosure."  (Docket No. 1, Ex. A at PageID #: 6-10.)[5]  In their initial Petition, the plaintiffs alleged that, after falling behind in their mortgage payments, they had unsuccessfully attempted to negotiate with Chase.  They contended that, in its negotiation and in its initiation of foreclosure proceedings, Chase had violated federal and state debt collection practice regulations.  (Petition to Stay Foreclosure ¶ 6.)  The initial Petition asked the Chancery Court to stay the foreclosures and to permit the plaintiffs to pursue "any and all private rights and causes of action to which they are entitled . . . ."  (*Id.* ¶ 7.)  Chase reset the foreclosure sales for December 4, 2014.  (Docket No. 1, Ex. A, at PageID #: 14, Notice of Preliminary Hearing Reset.)  Chase initially filed a Motion to Dismiss, in which Chase argued that the plaintiffs' Petition failed to state a claim.  (Docket No. 1, Ex. A, Motion to Dismiss by JP Morgan Chase and Memorandum Supporting Motion to Dismiss by Defendant JP Morgan Chase, at PageID #: 15-20.)

---

[4] The plaintiffs have referenced efforts by Chase to "enforce the notes" in multiple filings, a point that Chase does not appear to dispute.  Neither party has explained the nature of the 2004 enforcement efforts.

[5] The defendants attached the entire state court docket as Exhibit A to its Notice of Removal. That docket entry does not contain Page ID numbers.  Therefore, the court will refer to the names of particular state court filings herein.

The plaintiffs sought leave to file an Amended Petition, in which they alleged that, as reflected in the recorded Assignments, Chase was not a "holder" entitled to enforce the instruments because it had assigned its interests to Citibank. The plaintiffs alleged that Chase had erroneously and fraudulently accepted mortgage payments from them, that Chase had fraudulently held itself out as the holder during loan modification negotiations, that Chase initiated foreclosure proceedings without authority to do so, that the plaintiffs faced a risk that Citibank would attempt to collect on the debts or foreclose on the Properties based on Citibank's rights under the Assignments, and that the plaintiffs therefore faced the potential for double liability. The Amended Petition attached copies of the Deeds of Trust and Assignments at issue. Chase substituted counsel, voluntarily retracted its Motion to Dismiss the original Petition, removed the case to this court based on diversity jurisdiction on November 27, 2013 (Docket No. 1), and agreed to defer the foreclosure sales until January 3, 2014.

### III. __The Complaint__

Following removal, on December 16, 2014, the plaintiffs filed an Amended Petition for Injunction to Stay the Sale of Real Estate Conveyed by Deed of Trust and Complaint for Damages, which the court will refer to as the "Complaint." (Docket No. 7.) Chase apparently deferred the foreclosure sales.

In the Complaint, the plaintiffs allege that the recorded Assignments to Citibank were effective as a "special endorsement" under Tenn. Code Ann. § 47-3-205(a), that no subsequent assignments were recorded in Sumner County, that Citibank (not Chase) therefore was entitled to hold the notes and enforce them from December 1998 forward, that Chase violated Tenn. Code Ann. § 47-3-412 and the Assignments' terms by collecting mortgage payments from 1998 through 2008, and that Chase initiated wrongful foreclosure proceedings in which it failed to list

Citibank as the trustee. The plaintiffs also alleged that Chase engaged in "unlawful and unethical pre-foreclosure tactics" by walking unannounced into the homes (which were occupied by rental tenants), presenting foreclosure documents to the tenants, changing locks on the doors of one of the Properties, and placing large postings on the Properties stating that they were subject to foreclosure. The plaintiffs alleged that these tactics, which allegedly spanned five years, caused the tenants not pay rent to the plaintiffs and to move out prematurely, resulting in over $100,000 in lost rental income.

In their Complaint, the plaintiffs acknowledged that (1) based on a "[p]reliminary unofficial inquiry to Citibank," Citibank had no record of the Assignments or that it became a holder of the Notes under Tennessee law, (2) Citibank had not, to date, attempted to collect, receive, or foreclose on the Notes, and (3) "[b]ased on interactions between [the plaintiffs] and the Defendant," Chase never modified the plaintiffs' account in Chase's internal system to reflect that Citibank was the assignee of the Deeds and holder of the Notes, as reflected in the recorded Assignments. The plaintiffs alleged that Chase simply ignored (intentionally or unintentionally) the Assignments, notwithstanding the special endorsements stated therein. Thus, the plaintiffs alleged that Chase's servicing of the debt, attempts to renegotiate the debt, and efforts to foreclose on the debt were all unlawful. The plaintiffs demanded a refund of all payments made to Chase, an injunction against foreclosure proceedings by Chase, damages related to the foreclosure proceedings, a release of all claims against the plaintiffs, and that Chase pay Citibank for the plaintiffs' (alleged) liability to Citibank.

**IV. Post-Complaint Proceedings**

    **A. The CMO and the Presentation of the Allonges to the Plaintiffs**

On January 15, 2014, the court issued an initial Case Management Order ("CMO"). (Docket No. 13.). In the plaintiffs' theory of the case, the plaintiffs contended that Chase had specially endorsed and sent the Notes to Citibank about two weeks after Chase had lent the money to the plaintiffs and that Chase had no authority to collect on the underlying debts or to initiate foreclosure proceedings. In response, among other things, Chase argued that it was "the proper holder and/or servicer of the loan in question," although it did not explain why. The CMO set a fact discovery deadline of September 10, 2014 and a dispositive motion deadline of November 21, 2014. The court set a trial date of March 26, 2015.

In an effort to demonstrate its current holder status, Chase presented the Allonges to the plaintiffs in March 2014. Presumably, Chase did so to show the plaintiffs why the recorded Assignments were only "half the story," because Citibank (via Chase's employees acting under power of attorney for Citibank) had endorsed Citibank's interest back to Chase, at an unspecified time. Chase believed that the Allonges definitively established Chase's holder status and that, in light of the Allonges, the plaintiffs should nonsuit their case. The plaintiffs did not oblige.

**B. Chase's First Motion for Summary Judgment**

On May 21, 2015 – early in the fact discovery period and months in advance of the Rule 56 deadline – Chase filed a Motion for Summary Judgment ("First Motion for Summary Judgment"). (Docket No. 15.) In its opening Memorandum of Law (Docket No. 16), Chase argued that it was a "holder" because it possessed the Notes and because it was identified as the person to whom a special endorsement (from Citibank back to Chase) had been made. In other words, as Chase had contended to the plaintiffs in private discussions, Chase urged the court to find that (a) both the Assignments (from Chase to Citibank) and the Allonges (from Citibank back to Chase) were valid and effective, and (b) that Chase therefore was a holder of the Notes

7

entitled to enforce them against the plaintiffs.  The plaintiffs opposed the motion and argued that discovery was warranted for several reasons.  (*See* Docket No. 18.)  Among other areas of inquiry, the plaintiffs sought to investigate whether (as Chase contended) the undated Allonges from Citibank back to Chase were executed and effective *before* Chase attempted to enforce the Notes in 2004 and 2008.

Chase's Reply brief articulated new arguments that it had not raised in its opening brief, including a standing challenge in which it contended that the plaintiffs lacked standing to challenge the validity and enforceability of the Allonges.  (*See* Docket No. 22.)

In an October 10, 2014 Memorandum and Order, the court found that Chase's explanations of the assignment of "holder" status from Chase to Citibank, and back, were incomplete and unsupported in multiple respects.  (Docket No. 25.)  Among other things, the court observed that (1) Chase had not shown that it in fact had power of attorney to execute the Allonges; (2) it was unclear whether Chase had transferred possession of the Notes to Citibank in the first place; (3) Chase had not proven that there was no risk of double payment; and (4) even if Chase were correct that it became a holder or transferee of the Notes because of the Allonges, Chase had not shown when that transaction occurred (*i.e.*, that it had occurred *before* Chase enforced the Notes).  In light of these ambiguities, the court found that development of the factual record was warranted, that summary judgment was premature, and that the plaintiffs were entitled to discovery.

**C.  Discovery Through January 13, 2015**

On June 9, 2014 (soon after Chase had filed its early Rule 56 motion), the plaintiffs served discovery requests on Chase, including interrogatories and requests for production.[6] Chase responded to some of the plaintiffs' requests with boilerplate information, Chase did not provide clear answers to other questions concerning crucial issues in the case (such as facts relating to the negotiation of the Notes to Citibank and back), and Chase did not produce a record showing that Chase had the power of attorney to act on behalf of Citibank.[7] On September 9, 2014, the court granted the parties' request to extend the discovery deadline to November 3, 2014. (Docket No. 23.)

Following the court's October 10, 2014 Order, the plaintiffs made repeated requests for a complete production of records and supplemented verified interrogatory responses. Chase maintained that it would do so but that it needed more time. The court granted the parties another extension of the discovery deadline to January 2, 2015 (Docket No. 27), and the court reset the trial date (Docket No. 28.) Chase did not provide supplemental verified responses or a complete production of records by January 2, 2015.

On or about January 6, 2015, the plaintiffs requested a discovery dispute telephone conference, which the court, in a January 8, 2015 Order, set for January 13, 2015. (Docket No. 9.) On January 9, 2015 – after the court had set a date for the conference but before the conference was to take place – Chase produced over 2,100 pages of records to the plaintiffs.

---

[6] The court did not rule on the First Motion for Summary Judgment until October 10, 2014. The parties conducted discovery while the motion was pending.

[7] It is not clear to the court whether either party appreciated the relevance of Chase's power of attorney until the court's October 10, 2014 Memorandum & Order.

That production did not include a document reflecting Chase's power of attorney to act on behalf of Citibank.

Between August 15, 2014 and January 6, 2015, when the plaintiffs requested a discovery dispute telephone conference, the plaintiffs also sought to depose certain current and former Chase employees. The plaintiffs' Motion to Compel chronicles their efforts, which began in August 15, 2014, when the plaintiffs requested to depose six people once Chase had responded to written discovery. Those six people included Fouche, Martinez, and Eddowes (the Assistant Treasurers who had signed the Assignments to Citibank), Munoz (who had affixed the stamps to the Assignments at an unspecified time), and Cooley and Richard (the Chase Vice Presidents who had signed the Allonges from Citibank back to Chase).

On October 16, 2014 (six days after the court denied Chase's Rule 56 motion), the plaintiffs renewed their request to depose those six individuals and reiterated their request for written discovery responses before depositions would take place. At some point before November 18, 2014, Chase informed the plaintiffs that Fouche and Munoz were not employed by Chase. On November 18, 2014, the plaintiffs reiterated their request for depositions, conditioned on written discovery responses that Chase still had not provided. The plaintiffs also asked for last known addresses for Fouche and Munoz. Chase's counsel responded by stating that Chase was working diligently to provide revised discovery responses, that Chase would "work to coordinate deposition dates," and that the prospective deponents worked in Tampa, Florida, and Monroe, Louisiana.

On December 3 and December 8, 2014, the plaintiffs sent emails to Chase, reiterating their request for depositions, again offering potential deposition dates, and again stating that discovery responses had not been received. On December 31, 2014, plaintiffs' counsel again

emailed Chase to request formal answers to written discovery and to request deposition dates. On January 6, 2015, after Chase had failed to respond to discovery by January 2, 2015 (as it had been ordered to do), the plaintiffs again requested deposition dates, last known addresses for the two former employees, a job description for each deponent, and a copy of their personnel files.

On January 9, 2015, Chase responded to the plaintiffs' request, making additional factual representations and changing its position concerning the plaintiffs' requested depositions. Among other things, Chase represented that (1) no one at Chase was aware of any employees, supervisors, or agents that had independent personal knowledge of the facts surrounding the assignments or endorsements, (2) Chase had received an affidavit from Citibank (which it had provided to the plaintiffs in November 2014) showing that Chase claimed no title or interest in the loans, and (3) Chase had always maintained physical possession of the Notes. In light of these facts, Chase represented to the plaintiffs that Chase was always the holder of the Notes, thereby rendering irrelevant any further discovery related to the chain of title, including the power of attorney, the Allonges, and the like. For the first time, Chase objected to the depositions on the basis that the plaintiffs had never provided formal notices of deposition. Also (apparently) for the first time, Chase objected to providing personnel files and job descriptions for the requested deponents, absent a formal discovery request. Chase represented that it was "working on an affidavit" that would reflect Chase's continued possession of the Notes and that Chase would permit that affiant to be deposed once the affidavit was produced.

### D.  The January 13, 2015 Discovery Conference and Chase's Untimely Discovery

On January 13, 2015, the court held a discovery dispute telephone conference with the parties. The plaintiffs complained that Chase had only recently produced records – *after* the January 2, 2015 fact discovery deadline – that Chase had not produced a document reflecting

11

power of attorney, that Chase still had not provided verified supplemental discovery responses, and that Chase had objected to producing certain fact witnesses for deposition. Counsel for Chase represented that Chase had been unable to locate a power of attorney document, despite a diligent search, and that Chase was prepared to stipulate to its inability to locate that record. In terms of its representations to the court concerning negotiation of the Notes, Chase changed its position yet again, claiming that Citibank had *never* acquired any interest in the Notes because the Notes were never physically transferred to Citibank.[8] In other words, after filing a Motion for Summary Judgment premised on the notion that Assignments and Allonges demonstrated Chase's right to enforce the Notes (and that the court should grant judgment in their favor on that basis), Chase took the position at the conference that the Allonges and endorsement were actually *irrelevant* to the court's resolution of the case. Chase also countered that the requested depositions were unnecessary in light of those facts.

On January 13, 2015, following the conference, the court ordered Chase to respond to all outstanding discovery requests by February 13, 2015, reset the fact discovery deadline to March 15, 2015, and reset the Rule 56 deadline to April 15, 2015. The court also stated that the parties could file a motion (a Motion to Compel from the plaintiffs or a Motion for Protective Order from Chase) if they could not resolve their dispute concerning depositions.[9]

---

[8] The court was unaware of the parties' dialogue concerning this issue following the October 10, 2014 ruling on Chase's Rule 56 motion.

[9] The plaintiffs contend that the court granted them leave to depose the requested witnesses. That is incorrect: as the court's January 13, 2015 Order stated, the court did not order any depositions to take place; instead, the court granted the parties leave to file a motion concerning the issue. During the conference, the court did express skepticism of Chase's position concerning depositions, although it ultimately reserved ruling on the issue until presented by motion.

Chase did not furnish final discovery responses by February 13, 2015. Instead, at 4:18 p.m. on that date, Chase filed a request for a further extension of time to February 27, 2015 (Docket No. 33), which the plaintiffs opposed (Docket No. 34). The court denied the extension request. (Docket No. 35.) Nevertheless, Chase served two documents on the plaintiffs after the deadline. First, on February 18, 2015, it produced a document styled as a "Limited Power of Attorney," which is dated February 4, 2005 and signed by Chase Assistant Vice President Alice Miller and Citibank Vice President Kristen Discoll. Second, on February 27, 2015, Chase served verified supplemental interrogatory responses, which are signed by an employee named David Bessas and, in large part, rely on the late-produced power of attorney document. As the plaintiffs have pointed out in subsequent filings, these documents contain some curious ambiguities. For instance, the Limited Power of Attorney applies to "certain mortgage loans," but it is not evident from the face of the document that the plaintiffs' loans were subject to that agreement. In its interrogatory requests, the plaintiffs asked Chase to state the basis for its position that Chase executed the Allonges as Attorney in Fact for Citibank, to which Chase responds by referring the plaintiffs to "the relevant Power of Attorney" (*i.e.*, the Limited Power of Attorney document). The plaintiffs also asked when Chase executed the Allonges, to which Chase responded that "the allonges were executed shortly before the foreclosure proceedings at issue in this case began" – but Chase did not a provide a date or a more specific time frame. In response to the plaintiffs' interrogatory about whether Chase ever had a servicing agreement with Citibank concerning the plaintiffs' loans, Chase stated that it did not, because it had owned the loans at issue all along.[10]

---

[10] It is not clear to the court how that position comports with the terms of the Limited Power of Attorney, which describes Chase as the "Master Servicer" for Citibank and which Chase

### E. The Plaintiffs' Motion for Sanctions

On February 25, 2015 – after Chase served the power of attorney document and before Chase filed its supplemental interrogatory responses, the plaintiffs filed a Motion for Sanctions under Rule 37, asking the court to sanction Chase for failing to complete its written discovery by the February 13, 2015 deadline. The plaintiffs urge the court to impose the following sanctions: (1) treat certain facts as established,[11] (2) prohibit Chase from supporting certain defenses or opposing certain claims, or from introducing designated matters into evidence,[12] and (3) impose

---

suggests was the basis for its position (or at least its previous position) that the Allonges were effective. Perhaps one could construe Chase's answer to Interrogatory No. 3 as simply indicating why it *previously* contended that it had power of attorney to act for Citibank, even though it now believes that the document is irrelevant because Chase never transferred possession, never relinquished ownership, and never lost its status as "holder" of the loans in the first place. Nevertheless, the court agrees with the plaintiffs that Chase's responses are not models of clarity.

[11] The plaintiffs have asked the court to find that the following facts are established: (1) Chase did not have authority to execute the allonges as Attorney in Fact for Citibank; (2) the dating of the allonges has no bearing on Chase's lack of a right to initiate foreclosure proceedings; (3) Chase never had a servicing agreement with Citibank; (4) Chase had no basis for initiating foreclosure proceedings; (5) Mr. and Mrs. Daee owe no arrears or payments due under the current notes or mortgages to the Chase, and there is no basis for any amount to be due; (6) the presence or absence of any benefit from the sale of the notes to Citibank has no bearing on Chase's lack of a right to initiate foreclosure proceedings; (7) whether or not Chase sent the Notes or Deeds of Trust to Citibank after it assigned the Deeds of Trust and endorsed the Notes to Citibank on December 17, 1998 has no bearing on Citibank's lack of a right to initiate foreclosure proceedings; (8) whether or not Chase received the Notes or Deeds of Trust from Citibank after Chase executed the Allonges has no bearing on Citibank's lack of a right to initiate foreclosure proceedings; and (9) whether or not Chase has been paid by a default insurance policy has no bearing on Chase's lack of a right to initiate foreclosure proceedings.

[12] The plaintiffs urge the court to bar Chase from introducing evidence produced after February 13, 2015 that Chase claims would support (1) its own authority to act as Citibank's attorney in fact when it executed the Allonges, (2) its allegation that it sent Citibank any documents related to the Notes, the Deeds of Trust, and the Properties, (3) its allegation that Citibank sent Chase

monetary sanctions on Chase for costs associated with the Motion for Sanctions, including $2,500 related to the discovery dispute telephone conference (including preparation, attendance, and follow-up) and $5,000 related to the expedited Motion for Sanctions and the earlier Response in opposition to Chase's Motion to Extend Written Discovery Deadlines. (Docket Nos. 47 and 49.)[13]

In Response, Chase contends that its failure to meet the deadline was justifiable, that the plaintiffs were not prejudiced by the untimely disclosures, and that, in light of the disclosures, many of the plaintiffs' objections concerning the interrogatory responses are irrelevant. Chase also argues that the plaintiffs' request to establish certain facts are "nonsensical" and, in some instances, conflict with allegations in the plaintiffs' Complaint or facts that have otherwise been established. Finally, Chase contends that the monetary sanctions requested by the plaintiffs are inflated and unsupported. In their Reply, the plaintiffs argue that the court should strike the Limited Power of Attorney and verified supplemental interrogatory responses attached to Chase's motion, that Chase's delay is prejudicial to the plaintiffs, and that the requested

---

any documents concerning the Notes, Deeds of Trust, or the Properties, and (4) any evidence showing that it had a servicing agreement with Citibank.

[13] On March 4, 2015, plaintiffs' counsel filed an Affidavit of Attorney Fees, in which plaintiffs' counsel avers that it cost him $2,500 in reimbursable fees and expenses to prepare for, attend, and "follow" up after the discovery dispute telephone conference, and that "the attorney fees for the expedited preparation of and filing" the Motion for Sanctions . . . was [sic] $5,000[.]"  Mr. Neels' affidavit does not set forth an hourly rate or allot time to particular tasks – it simply provides two aggregate numbers.  In their Reply, the plaintiffs contend that the $2,500 figure reflects 6.4 hours of work at $395 per hour, although plaintiffs' counsel did not file a supplemental affidavit to that effect.

sanctions are justified.[14]  The plaintiffs also contend that Chase has not adequately responded to Interrogatories Nos. 4 and 6.

### F.  Deposition Discovery Efforts and the Motion to Compel Depositions

On February 22, 2015, the plaintiffs served (a) notices of deposition for five Chase employees, including four individuals they had previously requested and Ms. Miller, and (b) copies of subpoenas issued to former employees Eddowes and Fouche.  On March 2, 2015, the plaintiffs emailed proposed deposition dates and times to Chase.  Although Chase had represented months earlier that the deponents were located in Florida and Louisiana, counsel for Chase represented that it was trying to locate the deponents.  Also, Chase represented that it was unsure whether the plaintiffs had requested last known addresses for the deponents, even though the plaintiffs had requested that information multiple times.  The general tone of the email indicates that Chase was prepared to present the current employees for deposition, stating that "[w]orking together to set these at a convenient time for all would likely be the best option."

On March 4, 2015, the plaintiffs emailed Chase a deposition notice for the deposition of David Bessas, the individual who signed the supplemental interrogatory responses.  The plaintiffs provided multiple dates over a three-week period to take depositions of Bessas and other individuals.  In its response to that request, Chase represented, apparently for the first time, that it was not prepared to present its employees for deposition based on deposition notices, and that the plaintiffs would need to subpoena the employees.  In an effort to comply, the plaintiffs asked for dates and times to place on the subpoenas.  On March 9, 2015, the plaintiffs again

---

[14] The plaintiffs also argued that the court should treat the Motion for Sanctions as unopposed because Chase's Response was filed late.  The plaintiffs have moved to withdraw that argument. (Docket No. 63.)

requested dates and times to place on the subpoenas before serving them.  To accommodate these depositions, the parties requested and received an extension of the deposition deadline to March 31, 2015.  As of March 31, 2015, Chase had not provided dates or times for the depositions.

On March 31, 2015, the plaintiffs filed the instant Motion to Compel (Docket No. 57), in which they (1) seek to compel depositions of six Chase employees, including Miller, Bessas, Cooley, Martinez, Richard, and Munoz, (2) request that the court reset the dispositive motion deadline to May 15, 2015 and reset the trial date, and (3) impose sanctions on Chase by granting the plaintiffs their fees associated with the Motion to Compel.[15]  On April 15, 2015, Chase filed a Response in opposition to the motion.  (Docket No. 59.)

### G.  Motions for Summary Judgment

On March 30, 2015 (one day before the plaintiffs filed their Motion to Compel), Chase filed a Second Motion for Summary Judgment (Docket No. 54) with a supporting Memorandum of Law (Docket No. 55), and a Statement of Undisputed Material Facts ("SUMF") (Docket No. 56),  The motion attaches and relies upon, *inter alia*, the late-served verified interrogatory responses and Limited Power of Attorney, a November 20, 2014 affidavit from Citibank (in which Citibank disclaims any claim for payment concerning the plaintiffs' loans), and a sworn affirmation from Citibank (in which Citibank states that it could locate no record of a transfer of possession of the Notes to it).  On April 20, 2015, the plaintiffs filed a Response in opposition to the motion (Docket No. 69), including a Memorandum of Law (Docket No. 61, Attach. No. 1) and a Response to Chase's SUMF (Docket No. 61, Attach. No. 2).

---

[15] The plaintiffs did not file an attorney affidavit in support of the fee request relative to their Motion to Compel.  However, the plaintiffs stated that, if the motion is granted, they "will submit an affidavit of attorney's fees."

On April 15, 2015, the plaintiffs filed a Motion for Summary Judgment (Docket No. 60), in support of which it has filed a Memorandum of Law (Docket No. 60, Attach. No. 1) and a Statement of Material Facts (Docket No. 60, Attach, No. 2). The plaintiffs contend that the court should grant them a default judgment (a) because granting the Motion for Sanctions and treating certain facts as established essentially compels judgment in the plaintiffs' favor, or (b) even if the the court denies the plaintiffs' Motion for Sanctions and Motion to Compel, the existing record demonstrates that the plaintiffs are entitled to judgment because neither Chase nor Citibank is a "holder" of the Notes. Among other things, the plaintiffs point out several ambiguities and potential contradictions related to the Limited Power of Attorney.

## ANALYSIS

### I. Applicable Federal Rules

Under Rule 37(b)(2)(A)(ii)-(vii), "[i]f a party . . . fails to obey an order to provide or permit discovery, . . . the court where the action is pending may issue further just orders. They may include the following: (i) directing that the matters embraced in the order or other designated facts be taken as established for purposes of the action, as the prevailing party claims; (ii) prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters into evidence; (iii) striking pleadings in whole or in part; (iv) staying further proceedings until the order is obeyed; (v) dismissing the action in whole or in part; (vi) rendering a default judgment against the disobedient party; or (vii) treating as contempt of court the failure to obey any order except an order to submit to a physical or mental examination." Furthermore, under Rule 37(b)(2)(C), "[i]nstead of or in addition to the orders above, the court must order the disobedient party, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the failure was

substantially justified or other circumstances make an award of expenses unjust." Under Rule 26(e), a party responding to an interrogatory or a request for production "must supplement or correct its disclosures or response: (A) in a timely manner of the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing; or (B) as ordered by the court." If a party fails to comply with Rule 26(e), Rule 37(c) permits the court to (1) preclude the party from using that information or witness to supply evidence on a motion, at a hearing, or at trial, or (2) either (a) order payment of the expenses, including attorney's fees, caused by the failure, (b) inform the jury of the party's failure, or (c) impose "other appropriate sanctions," including any of the orders listed in Rule 37(b)(2)(A)(i)-(vi).

The court retains discretion in applying these rules and fashioning appropriate equitable remedies. *See Tisdale v. Fed. Express Corp.*, 415 F.3d 516, 526 (6th Cir. 2005); *Toth v. Grand Trunk R.R.*, 306 F.3d 335, 343 (6th Cir. 2002); *Roberts ex rel Johnson v. Galen of Va., Inc.*, 325 F.3d 776, 784 (6th Cir. 2003) (clarifying that Rule 37(c)(1) does not mandate exclusion for violating Rules 26(a) or (e)); *Sommer v. Davis*, 317 F.3d 686, 296 (6th Cir. 2003).

Finally, under Rule 16(f), "[o]n motion or on its own, the court may issue *any just orders*, including those authorized by Rule 37(b)(2)(A)(ii)-(vii), if a party or its attorney: . . . (C) fails to obey a scheduling or other pretrial order." (Emphasis added.)

## II.  <u>Application</u>

The record demonstrates that Chase violated multiple court-ordered deadlines, refused to provide timely responses to written discovery despite repeated requests from the plaintiffs, and dodged efforts to provide employees for depositions.

With respect to interrogatory responses, Chase delayed supplementing its responses to the plaintiffs' interrogatories for months and failed to provide responses by the February 13, 2015 court-ordered deadline. Chase therefore violated the court's pretrial order. In denying Chase's eleventh hour request for an extension of the February 13, 2015, the court already rejected Chase's asserted justifications for its delay, which it repeated in Response to the Motion for Sanctions. Furthermore, the court agrees that the supplemented responses to Interrogatories Nos. 4 and 6 remain vague and only partially responsive.

With respect to its document productions, Chase was supposed to produce records by a January 2, 2015 deadline, but failed to do so. Instead, it produced nearly 2,200 pages of records after the deadline, and only did so after the plaintiffs had requested a discovery dispute telephone conference with the court. Furthermore, although it was a potentially crucial document in the case, Chase did not timely produce the Limited Power of Attorney, even after the court pointed out the significance of that document in its October 10, 2014 Memorandum and Order.

With respect to deposition discovery, Chase "bobbed and weaved" over the span of nearly nine months. It initially suggested that it would present the witnesses through informal discussions. After months of communications with plaintiffs' counsel about these depositions, Chase suddenly objected to presenting witnesses without formal notices of deposition. After the plaintiffs provided the requested notices, Chase then switched positions once more, contending that it would not present the employees for deposition without subpoenas. After receiving the requested subpoenas from the plaintiffs, Chase did not offer deposition dates or otherwise present any witnesses.

Also, it is not lost on the court that Chase has essentially disavowed the basis on which it initially demanded judgment. Chase sought a pre-discovery merits judgment on the basis that

the Assignments and the Allonges were valid and effective. After the court's October 10, 2014 Memorandum pointed out multiple missing steps and unsupported assumptions inherent in Chase's representations to the court, Chase conducted further investigation and has now reversed course, contending that those transactions are *irrelevant*. Chase now essentially takes the position that the documents it recorded with the Sumner County Register of Deeds were (and remain) legally irrelevant and should be ignored in the court's analysis. After months of delay, Chase now claims that no depositions are warranted because, according to Chase, none of the employees or former employees have any personal knowledge of the underlying transactions, and the sworn representations from Citibank demonstrate – definitively – that possession never transferred and that Citibank has no interests to assert.

Chase's delays have also contributed to a cluttered docket that now includes two Rule 56 motions that will be rendered moot by the court's rulings on the Motion for Sanctions and the Motion to Compel. If Chase had timely produced the relevant information, the efforts plaintiffs' counsel has expended relative to those two motions could have been avoided.

The court finds that Chase has delayed these proceedings without substantial justification, prevented the plaintiffs from obtaining necessary discovery, and frustrated this court's ability to make an informed ruling as to whether the plaintiffs or Chase (or neither) is entitled to summary judgment. Chase seems to believe that it can operate on its own schedule, that it can selectively produce records that favor its position (whatever that position may be at a certain point in time), and that it can prevent reasonable inquiry into the veracity of its (shifting) representations and the import of underlying records. The court's orders and the federal rules trump Chase's discovery preferences. Accordingly, sanctions are warranted under both Rule 16 and Rule 37.

With respect to the Motion to Compel, the court finds that the plaintiffs are entitled to take discovery depositions. Although the court did not order Chase to produce employees for deposition, the court finds that the plaintiffs have justified why they should be permitted to take these depositions, which include employees involved in the underlying transactions, the individual who signed the supplemental interrogatory responses, and the individual who signed the Limited Power of Attorney. Although it may be that the facts will ultimately warrant judgment for Chase (as Chase claims), the plaintiffs are entitled to probe Chase's representations by deposing potential witnesses, and the court can hardly fault the plaintiffs for declining to take Chase's factual representations at face value at this point. The court is also not pleased with some of the formalistic objections being raised by Chase's counsel after months of informal discussions.

Chase's tactics have caused the plaintiffs to expend significant time and effort in fruitless endeavors, including (1) seeking written discovery responses and documents from Chase, (2) attempting to schedule depositions, (3) opposing a Motion for Summary Judgment in which Chase asserted positions that it now disclaims, (4) participating in a discovery dispute telephone conference, (5) filing a Motion to Compel and a Motion for Sanctions, both of which have merit, (6) responding to Chase's Second Motion for Summary Judgment, which will be rendered moot by the court's ruling on the plaintiffs' other motions, and (7) filing its own Motion for Summary Judgment on the truncated record, which motion will also be rendered moot by this court's ruling on the Motion for Summary Judgment.

In determining appropriate sanctions for Chase's misconduct, it is within the court's power to grant judgment to the plaintiffs or to preclude Chase from taking certain positions or from relying on late-produced information, including late-filed documents and the supplemental

verified interrogatory responses.  Nevertheless, as a general matter, the court is strongly inclined to rule on the merits of an action based on a developed record and an appropriate application of the law to that record.  Furthermore, the court is loath to draw factual conclusions that conflict with the underlying evidence or that will cloud the chain of holder status relative to the Notes even further.

In the court's view, the plaintiffs' efforts to (1) obtain discovery, (2) respond to Chase's Second Rule 56 motion, and (3) file their own Rule 56 motion have been all occasioned by Chase's failure to comply with the court's orders and its general discovery obligations. Therefore, in lieu of imposing any other sanctions authorized by the federal rules, the court finds that the plaintiffs are entitled to recover all fees and expenses incurred in each of these three categories.[16]  The court declines to impose any of the other sanctions requested by the plaintiffs or otherwise available to the court.  With respect to awarding fees and expenses, the attorney affidavit filed with respect to the Motion for Sanctions is insufficiently detailed, the plaintiffs have not filed an attorney affidavit concerning the Motion to Compel, and the court's award encompasses additional tasks beyond these directly addressed in the two motions.  Therefore, the court will direct the plaintiffs to file an application for fees and expenses that includes sufficient detail relative to the categories of tasks identified by the court.  Although the plaintiffs will not be seeking these fees and expenses by motion under Rule 54, the plaintiffs should utilize the requirements set forth in Local Rule 54.01(b)(3) as a guide for the level of detail required.

---

[16] As the court understands it, the plaintiffs have been seeking to obtain discovery since June 2014.  Following service of discovery, any efforts by the plaintiffs to procure responses or supplemental responses to written discovery or to arrange depositions is recoverable, in addition to attorney time spent with respect to the discovery dispute telephone conference, the Motion for Sanctions and the Motion to Compel (including reply briefs), and the plaintiffs' expedited response to Chase's Motion for Extension of Time.

The court will also order Chase to present all of the requested employee witnesses for deposition, whether through a deposition notice or subpoena.[17]  Given that some of these deponents may be located out of state, the court will permit the parties 45 days to conduct these depositions.  As to the plaintiffs' argument that two interrogatory responses by the defendant remain deficient, the court will order Chase to supplement its responses by May 18, 2015.  With respect to Interrogatory No. 4, Chase must state the specific documents or information on which it bases its answer that "the alonges were executed shortly before the foreclosure proceedings at issue in this case began."  With respect to Interrogatory No. 6, Chase must provide dates for the foreclosure proceedings it initiated against the plaintiffs, or state why it cannot provide (or has not provided) those dates.  The court's rulings should not be construed as precluding the plaintiffs from conducting meaningful follow-up inquiries concerning information produced after February 13, 2015.[18]

The court will term the pending Rule 56 motions and will reset the dispositive motion deadline.  The court will continue the trial date, which will be reset, if appropriate, after the court rules on any dispositive motions filed by the parties.

Although the court does not reach the merits of the Rule 56 motions, the court understands Chase's current position, which is essentially that, no matter how you "cut the cake," the plaintiffs will not prevail.  The plaintiffs' position seems to be that *neither* Chase nor Citibank is a "holder" entitled to enforce the Notes.  If the plaintiffs contend that *no one* is

---

[17] The court reserves judgment as to whether it may also award the plaintiffs their fees and expenses that will be incurred in taking these depositions.

[18] For example, the plaintiffs point out that the face of the Limited of Power of Attorney purports to incorporate another document.  The plaintiffs are not precluded from requesting a copy of that document.

entitled to enforce the Notes, they are treading on thin ice, because the Sixth Circuit has taken a dim view of lawsuits advancing this type of argument. In *Thomson v. Bank of Am., N.A.*, 773 F.3d 741, 748 (6th Cir. 2014), another mortgage default-related case, the Sixth Circuit observed that, "[o]ver the past few years, the district courts in this circuit, particularly in Tennessee, have entertained a spate of civil actions that advance legal theories similar to Thompson's." In a footnote listing the types of civil actions to which the Sixth Circuit was referring, it cited to the October 10, 2014 Memorandum & Order in *this case*. *Id.* at 748 n.1. The Sixth Circuit described lawsuits like this one as "scattershot affairs, tossing myriad (sometimes contradictory) legal theories at the court to see what sticks," and also characterized them as a form of "creative litigation." *Id.* at 748; *see also Livonia Properties Holdings, LLC v. 12840-12976 Farmington Road Holdings, LLC*, 399 F. App'x 97 (6th Cir. 2010) (stating that, where plaintiff made mortgage payments directly to defendant for years without questioning defendant's right to receive payment and entered into a prenegotiation agreement with the defendant after encountering difficulties in repayment, plaintiff's "current questioning of the mortgage's ownership or assignments appears disingenuous . . . "). Here, particularly where the plaintiffs never objected to paying Chase and where Citibank avers that it claims no interest in Notes or Deeds of Trust, the court is cognizant that Chase may be entitled to judgment. However, as the court stated in its October 10, 2014 Memorandum, the court will not render judgment until the plaintiffs have had a full and fair opportunity to probe Chase's positions. Indeed, if the court had granted Chase's First Motion for Summary Judgment, it appears that the court would have granted judgment on grounds that the supplemented record now contradicts.

On a final note, correspondence on the docket reflects some type of breakdown in the parties' informal efforts to schedule mediation and potential settlement of this matter. The court

once again encourages the parties to attempt to mediate their dispute before incurring additional fees and expenses in this case.

## CONCLUSION

For the reasons stated herein, the Motion for Sanctions, the Motion to Compel, and the Motion to Withdraw Argument will be granted, the plaintiffs will be ordered to a file an application for fees and expenses consistent with the instructions set forth in this opinion, Chase will be ordered to serve supplemental interrogatory responses by May 18, 2015, the plaintiffs will have 45 days in which to conduct the six requested depositions, the Rule 56 motions will be denied without prejudice, and the court will reset the dispositive motion deadline.

An appropriate order will enter.

ALETA A. TRAUGER
United States District Judge