UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| MAX DAEE and TONI DAEE, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | Case No. 3:13-1332 |
| ) | Judge Aleta A. Trauger |
| JPMORGAN CHASE BANK, N.A., ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM

Pending before the court are three motions: 1) a Motion to Amend the Petition filed by the plaintiffs Max and Toni Daee (Docket No. 96), to which the defendant JPMorgan Chase Bank, N.A. ("Chase") has filed a Response (Docket No. 116), and the Daees have filed a Reply (Docket No. 118); 2) a Motion for Summary Judgment filed by Chase (Docket No. 102), to which the Daees have filed a Response in Opposition (Docket No. 121), and Chase has filed a Reply (Docket No. 123); and 3) a Motion for Partial Summary Judgment filed by the Daees (Docket No. 110), to which Chase has filed a Response (Docket No. 120), and the Daees have filed a Reply (Docket No. 122). For the reasons discussed herein, Chase's Motion for Summary Judgment will be granted and the Daees' Motion to Amend and Motion for Partial Summary Judgment will be denied.

## BACKGROUND & PROCEDURAL HISTORY

According to the undisputed facts in the record, on December 3, 1998, the Daees entered into a financing agreement with Chase for a residential property located at 1405 Saundersville Road in Hendersonville, TN (the "Property"). Pursuant to the agreement, the Daees executed a note in favor of Chase in the amount of approximately $175,000 (the "Note"). Chase also

1

obtained a deed of trust on the Property to secure the Note, which was recorded with the Sumner County Register of Deeds within days.[1]  It is undisputed that the Daees subsequently defaulted on the loan and have not made any payments since 2011, at the latest.  Before the default, the Daees made payments to Chase and never objected to Chase's authority to enforce the Note or to make collection efforts against the Daees when they were in arrears.

Following the Daees' default, Chase initiated foreclosure proceedings on the Property.  At that time, it was uncovered that, on December 17, 1998, Chase had executed an assignment of the deed of trust on the Property to Citibank, N.A. ("Citibank"), which was recorded in the office of the Sumner County Register of Deeds on May 22, 2000 without any notification to the Daees (the "Assignment").

On October 30, 2013, the Daees filed a Petition to Stay Foreclosure against Chase in the Chancery Court of Sumner County, requesting an injunction to stop the scheduled foreclosure of the Property.[2]  (Docket No. 1-1.)  On November 27, 2013, Chase removed the action to federal court on the grounds of diversity jurisdiction.  (Docket No. 1.)  On December 16, 2014, the Daees filed an Amended Petition, which is the current operative pleading.  (Docket No. 7.)  The

---

[1] The record reflects that the original financing agreement was actually entered into with a predecessor-in-interest to Chase, but there is no dispute that Chase is the successor-in-interest to that entity.  The court will simply refer to the defendant and its predecessors collectively as "Chase."

[2] This action initially sought to prevent foreclosure proceedings by Chase involving both the Property and another residence located at 1411 Saundersville Road, for which the relevant facts appear to be virtually identical.  On November 23, 2015, however, pursuant to a settlement agreement between the parties, the Daees' claims involving the property at 1411 Saundersville Road were voluntarily dismissed.  (Docket No. 101.)  Many of the documents in the record that are referenced in this Memorandum, including prior decisions of the court in this matter, refer to both properties.

Amended Petition is based on the Daees' argument that, pursuant to the Assignment, Citibank – not Chase – is the rightful holder of, and the only party authorized to enforce, the Note. The Amended Petition alleges that Chase's attempt to foreclose on the Property is, therefore, wrongful, as were Chase's prior efforts to collect under the Note and its negotiations with the Daees. The Amended Petition ultimately centers on the Daees' assertion that failing to stop Chase's foreclosure proceedings could result in subjecting the Daees to double liability for the debt owed under the Note, allowing Chase to wrongfully enforce the Note while Citibank may also have its own rightful claim on the Note against the Daees.

The Amended Petition also alleges that Chase "undertook unlawful and unethical pre-foreclosure tactics," including entering the Property without permission, informing the Daees' tenants of the pending foreclosure, changing locks, and posting foreclosure notices on the Property, causing the tenants to move out prematurely and costing the Daees tens of thousands of dollars in lost rental income. (Docket No. 7 ¶ 34.) Finally, the Amended Petition alleges that Chase committed fraud by, among other things, failing to notify Citibank and the Daees of the Assignment, waiting over a year to record the Assignment, and representing that Chase was entitled to enforce the Note when it was not. In addition to an injunction to stay the foreclosure, the Amended Petition requests a return of all of the money the Daees paid on the Note to Chase over the years, as well as other damages related to the alleged fraud, the wrongful foreclosure proceedings, and Chase's pre-foreclosure actions.

On May 21, 2014, Chase filed is first Motion for Summary Judgment, well in advance of the operative deadline for completing discovery. (Docket No. 15.) In the filings related to the motion, the parties agreed that, in addition to the Assignment, the Note had been endorsed by Chase as payable to Citibank without recourse to Chase (the "Endorsment"). (Docket No. 18-3 ¶

5.)³ Chase had also produced, in the course of discovery, however, an undated allonge to the Note, signed by Kayla Cooley as Chase Vice President and "Authorized Officer," which states "Pay to the order of J.P. Morgan Chase Bank, N.A. Without Recourse" and lists the seller as "J.P. Morgan Chase, N.A. Attorney in Fact for Citibank National Association As Trustee." (Docket No. 15-2 (the "Cooley Allonge").)  Chase placed nothing in the record regarding the timing or circumstances surrounding the Cooley Allonge, nor was there any evidence in the record to explain how Chase was authorized to act on behalf of Citibank in executing the Cooley Allonge, or in otherwise transferring rights to the Note from Citibank back to Chase.  Further, the record at the time that Chase filed its first Motion for Summary Judgment was devoid of any evidence from Citibank regarding its relationship to the Note.

As explained in the court's October 10, 2014 Memorandum and Order denying Chase's first Motion for Summary Judgment, Chase's position at the time conceded that the Note had been transferred to Citibank but asserted that the Cooley Allonge then transferred the Note back to Chase.  (Docket No. 25.)  Finding that the record lacked sufficient evidence about the transactions between Citibank and Chase to conclusively show that the Cooley Allonge transferred rights to the Note from Citibank back to Chase, the court declined to grant summary judgment at the time.  (Docket No. 25 p. 10.)  The court found that Chase's motion was premature and that discovery, particularly into Chase's authority to execute the Cooley Allonge, should proceed.  (*Id.*)  The court noted the possibility that the Daees could be at risk of paying

---

³ In their Response to Chase's Statement of Material Facts connected to Chase's first Motion for Summary Judgment, the Daees indicated that they *disagreed* with Chase's assertion regarding the existence of the Endorsement.  They appear to have disagreed, however, only with Chase's statement that the Endorsement was executed *after*, rather than on, the same date as the Assignment.  It remains undisputed that the Note bears the Endorsement.

4

the same debt twice, were the court to allow Chase's foreclosure to proceed without first confirming that Chase was the proper party to enforce the Note. (*Id*. pp. 8-10.) In fact, in their response to Chase's Statement of Material Facts in support of its first Motion for Summary Judgment, the Daees specifically disagreed that they were seeking to "prevent [Chase] from foreclosing the [Note] and to disgorge any monies previously paid to [Chase] under the [Note]." (Docket No. 18-3 ¶ 14). Rather, the Daees stated that they sought "to protect themselves from being doubly liable, under the [Note], to two entities, specifically [Chase] and [Citibank]." (*Id*.)

On March 30, 2015, Chase filed its second Motion for Summary Judgment. (Docket No. 54.) As explained in the court's May 4, 2015 Memorandum, declining once again to rule on summary judgment, Chase had at this time changed its position from the one it advanced in its first Motion for Summary Judgment. (Docket No. 64.) Chase now argued that the Assignment and Endorsement were, in fact, erroneous; that the Note had never been transferred to Citibank; and, therefore, that Chase had retained the right to enforce the Note at all times, irrespective of the Cooley Allonge, which Chase appears to have admitted was not authorized. Specifically, Chase argued that the Endorsement had never been effective because the Note had never been physically transferred to Citibank, and there had never been any negotiations between Citibank and Chase regarding the Note. To support this position, Chase placed in the record the November 20, 2014 Affidavit of James Goddard on behalf of Citibank. (Docket No. 54-3.) The Affidavit states that Mr. Goddard is the Director and Associate General Counsel for Citibank and that Citibank "does not claim any right, title or interest in, or to, the loans made to Max Daee and Toni Daee, and, as a consequence, may not now, or in the future, prosecute any claim for payment in respect of those loans." (*Id*.) Accordingly, Chase argued in its Second Motion for Summary Judgment that the Cooley Allonge was irrelevant. Chase, therefore, also refused to

5

respond to the Daees' discovery requests related to the Cooley Allonge or to Chase's earlier assertion that it had a Limited Power of Attorney allowing it to execute the Cooley Allonge on Citibank's behalf.

Pending at the same time as Chase's Second Motion for Summary Judgment were motions filed by the Daees seeking to compel discovery and requesting sanctions against Citibank for its failure to comply with discovery requests. (Docket Nos. 47, 57.) The Daees had also filed their own first Motion for Summary Judgment. (Docket No. 60.) In considering all of these motions simultaneously, the court held that the confusion caused by Chase's vacillating defenses warranted giving the Daees a "full and fair opportunity to probe Chase's positions" and granted additional ongoing discovery. (Docket No. 64 p. 23-25.) Specifically, the court ordered that depositions of Chase agents could proceed regarding the chain of custody of the Note and Chase's earlier representations about the Assignment, Endorsement, and Cooley Allonge. This was despite the court's acknowledgment that, given the Daees' admission that they had never objected to Chase's enforcement of the Note prior to the litigation and the persuasiveness of the Goddard Affidavit, "Chase may be entitled to judgement." (*Id*. p. 25.) The court also admonished that, "[i]f the plaintiffs contend that *no one* is entitled to enforce the Notes, they are treading on thin ice." (*Id*. p. 24-25.) Nevertheless, the court declined to rule on summary judgment at the time, noting that, "if the court had granted Chase's *First* Motion for Summary Judgment, it appears that the court would have granted judgment on grounds that the supplemented record now contradicts." (*Id*. (emphasis added).) The court also issued sanctions against Chase, requiring Chase to pay for the Daees' attorney's fees and costs associated with the Daees' efforts to obtain discovery (including the motions to compel and for sanctions), the Daees' Response to Chase's second Motion for Summary Judgment, and the Daees' own first

6

Motion for Summary Judgment (which the court also declined to decide at the time). (*Id*. p. 23.) After subsequent briefing, the court awarded fees and costs to the Daees' in the amount of $25,680. (Docket No. 72.)

After several amendments to the Case Management Order, the final deadline for completing discovery was set for October 30, 2015, and the dispositive motion deadline, for November 27, 2015. (Docket No. 94.)

On November 20, 2015, the Daees filed a Motion to Amend the Petition, with an attached proposed Second Amended Complaint (Docket No. 96)[4] and a Memorandum in support (Docket No. 99). The Daees seek to add claims for libel of title; violation of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 ("FDCPA"); intentional infliction of emotional distress; negligent infliction of emotional distress; fraud; and forgery. In addition to the factual allegations in the currently operative Petition, the proposed Second Amended Complaint adds that Chase repeatedly made telephone calls and sent letters to the Daees regarding money owed on the Note, over the Daees' objections. The Daees seek $1.5 million in damages for the emotional distress they claim they suffered as a result of Chase's actions, as well as additional damages to recover the payments they made to Chase on the Note and the costs associated with the foreclosure proceedings, including alleged lost rent and property damage. On December 9, 2015, Chase filed a Response in Opposition (Docket No. 116) along with a Supplement

---

[4] The court notes that the proposed Second Amended Complaint does not include the Daees' request for a permanent injunction to stop the foreclosure on the Property that is central to the currently operative Petition. The Daees do not appear to be relinquishing this claim for relief, since, as outlined below, they have both opposed Chase's Motion for Summary Judgment with respect to the stay of the foreclosure and filed their own Motion for Partial Summary Judgment seeking to stop the foreclosure. Accordingly, the court will read the proposed Second Amended Complaint as a proposed supplement to, and not replacement of, the currently operative Petition.

Response (Docket No. 117) and, on December 16, 2015, the Daees filed a Reply (Docket No. 118).

On November 25, 2015, Chase filed its third, and currently pending, Motion for Summary Judgment with attached exhibits (Docket No. 102), along with a Memorandum in support (Docket No. 103), a Statement of Facts (Docket No. 104), and a number of additional documents (Docket Nos. 106-109). On December 17, 2015, the Daees filed a Response in Opposition along with a Response to Chase's Statement of Facts (Docket No.121), and, on December 28, 2015, Chase filed a Reply (Docket No. 123). Chase's current position remains the same as that asserted in its second Motion for Summary Judgment. Chase again argues that the Assignment and Endorsement have no effect, that Citibank has no interest in the Note, that Chase has always maintained the right to enforce the Note, and that the currently pending foreclosure should proceed. While Chase has been unable to explain the creation of the Assignment and Endorsement that Chase now argues are erroneous, Chase speculates that they were either executed in error (perhaps confusing the Note for a different note that actually *was* transferred to Citibank) or that Chase had considered transferring the Note to Citibank but then declined to do so. There is likewise no evidence in the record to explain the creation of the Cooley Allonge, but Chase asserts in its briefing that the Cooley Allonge may have been created after the foreclosure process began, at the request of the firm hired to act as a trustee for Chase in the foreclosure proceedings, in response to the discovery of the Assignment and Endorsement. (Docket No. 103 p. 4.) In the course of more recent discovery, Chase also produced another undated allonge to the Note, signed by Kimberly Allen as Chase's Vice President and Authorized Officer. (Docket No. 107 (the "Allen Allonge").) The Allen Allonge, however, was

8

left blank with respect to rendering the Note payable to any party, and there is no evidence in the record to suggest that it has any effect whatsoever.

On November 27, 2015, the Daees filed a Motion for Partial Summary Judgment and attached Statement of Facts, seeking to permanently stay the foreclosure proceedings. (Docket No. 110.) On December 17, 2015, Chase filed a Response in opposition (Docket No. 119) and a Response to the Daees' Statement of Facts (Docket No. 120), and, on December 27, 2015, the Daees filed a Reply (Docket No. 122). In both their response to Chase's Motion for Summary Judgment and in their own Motion, the Daees take the position that the Endorsement rendered Chase a non-holder of the Note, and the Cooley Allonge – by Chase's admission – lacked authority to transfer interests in the Note back to Chase. Acknowledging, however, that the Note was never effectively transferred to Citibank, and that Citibank has disavowed any interest in the Note, the Daees now argue that neither *Citibank* nor *Chase* can enforce the Note. (Docket No. 121 p. 6.)

It is undisputed that Citibank has never attempted to collect or enforce the Note. There is no evidence in the record that the Note ever left Chase's possession, and it is undisputed that Chase never delivered the Note to Citibank. Moreover, there is no evidence to suggest that the Note was ever transferred or sold by Chase to any other party. Finally, there is no evidence in the record that anyone other than Chase has ever attempted to collect under the Note or asserted the right to do so.

## CROSS-MOTIONS FOR SUMMARY JUDGMENT

**I.** **Legal Standard**

Rule 56 requires the court to grant a motion for summary judgment if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a

9

matter of law." Fed. R. Civ. P. 56(a). If a moving defendant shows that there is no genuine issue of material fact as to at least one essential element of the plaintiff's claim, the burden shifts to the plaintiff to provide evidence beyond the pleadings, "set[ting] forth specific facts showing that there is a genuine issue for trial." *Moldowan v. City of Warren*, 578 F.3d 351, 374 (6th Cir. 2009); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). "In evaluating the evidence, the court must draw all inferences in the light most favorable to the non-moving party." *Moldowan*, 578 F.3d at 374 (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

At this stage, "'the judge's function is not . . . to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial.'" *Id.* (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)). But "[t]he mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient," and the party's proof must be more than "merely colorable." *Anderson*, 477 U.S. 242, at 252. An issue of fact is "genuine" only if a reasonable jury could find for the non-moving party. *Moldowan*, 578 F.3d at 374 (citing *Anderson*, 477 U.S. at 252).

"On cross-motions for summary judgment, the court must evaluate each party's motion on its own merits, taking care in each instance to draw all reasonable inferences against the party whose motion is under consideration." *Dixon v. Univ. of Toledo*, 702 F.3d 269, 273 (6th Cir. 2012) (internal quotation marks and brackets omitted).

## II. <u>Analysis</u>

While the Daees continue to assert that their claim is about avoiding the potential for double liability, their argument that neither Chase nor Citibank can enforce the Note, coupled with a complete dearth of evidence that the Note could be enforced by any other party, means

10

that the Daees essentially argue that the Note cannot be enforced by anyone. As indicated in the court's earlier decision, this is an untenable position. The undisputed facts are clear that the Daees took out a loan to finance the Property and defaulted on that loan. The court has given the Daees the opportunity to conduct full discovery in this matter so as to ensure that foreclosure proceedings would not be carried out by a party not authorized to enforce the Note, leaving a claim against the Daees by a rightful creditor. After completing discovery, however, the Daees have no basis for contesting Chase's authority to enforce the Note other than the Endorsement and the Cooley Allonge, both of which were placed on the Note while it remained in Chase's possession. The record is clear that, despite these notations, the Note was never physically delivered to Citibank. Moreover, there is nothing in the record to show that Citibank has any basis for asserting any rights to the Note, as it never negotiated with Chase, or provided consideration to Chase, for such a transfer. In fact, Citibank actually disavows any rights to the Note now and in the future.

The Daees' argument that Chase, nonetheless, cannot enforce the Note on the basis of the alterations it made to the Note while the Note was in Chase's possession, has no merit. The Daees make a very technical argument about the definition of a holder under Tennessee law, which requires both physical possession of an instrument as well as that the instrument be either payable to bearer or expressly payable to the party in possession. Tenn. Code Ann. § 47-1-201(b)(21)(A). The Daees' argument that Chase is not a holder – because the Endorsement renders the Note payable to Citibank – obscures the undisputed fact that Chase was the original holder of the Note, executed as payable to Chase at the time the agreement was entered. Chase did not simply happen into possession of the Note.

11

The question, therefore, is not whether it can be proven that Chase has the rights of a holder; it is whether Chase ever effectively transferred its rights in the Note to Citibank, thus eviscerating Chase's rights as a holder and simultaneously rendering Citibank the proper holder of the Note. The record indicates that, while some steps may have been taken in contemplation of a possible transfer of the Note to Citibank, such a transfer was ultimately not completed, and Citibank never obtained an interest in the Note. Significantly, the Note was never physically delivered to Citibank, which is the primary element of transfer under Tennessee law. Tenn. Code Ann. § 47-3-203(a) ("An instrument is transferred when it is delivered by a person other than its issuer for the purpose of giving to the person receiving deliver the right to enforce the instrument.") Moreover, if there is any doubt whatsoever about whether Chase transferred the Note to Citibank, it is put to rest by Citibank's uncontested affirmation that it has no interest in the Note and will never seek to enforce any such interest. Yet, the Daees ask the court to imagine a world where it is possible that enough steps were taken that the right to enforce the Note no longer belongs to Chase, but not enough steps so that the right to enforce the Note belongs to Citibank, creating a Note that is payable to no one.[5] The court cannot, however, uphold a theory that would, in essence, absolve the Daees of their liability under a financing agreement that they, by their own admission, voluntarily entered into and then defaulted on. If the right to enforce the Note was not effectively transferred to Citibank, which the parties and

---

[5] If there were a dispute between Citibank and Chase as to whether the Note was transferred to Citibank, these steps – Chase's execution of the Assignment, Endorsement, and Cooley Allonge – might warrant further analysis as to whether Chase had any obligation to have transferred the Note to Citibank. In the absence of such a dispute, however, these steps are not relevant to Chase's right to enforce the Note.

12

Citibank agree it was not, then the Note remains payable to Chase. Any other finding would be patently absurd.

After completing discovery, the Daees have failed to show that there is any party other than Chase that has a right to the Note and, therefore, the Daees face no risk of double liability. Accordingly, Chase may proceed with the foreclosure and is not liable to the Daees for any prior enforcement of the Note. Chase's Motion for Summary Judgment will, therefore, be granted and, for the same reasons, the Daees' Motion for Partial Summary Judgment will be denied.

## MOTION TO AMEND

### I. Legal Standard

Federal Rule of Civil Procedure 15(a) governs amending pleadings before trial. A party may amend a pleading once as a matter of course either (a) within twenty-one days after serving it, or (b) if the pleading is one to which a responsive pleading is required, within twenty-one days after service of a responsive pleading or twenty-one days after service of a motion under Rule 12(b), (e) or (f), whichever is earlier. Fed. R. Civ. P. 15(a)(1). In all other cases, a party may only amend a pleading by obtaining the opposing party's written consent or receiving leave of the court. Fed. R. Civ. P. 15(a)(2). Where it is requested, the court should "freely" give leave when justice so requires. *Foman v. Davis*, 371 U.S. 178, 230 (1962).

However, a motion to amend may be denied where there is "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc." *Riverview Health Institute LLC v. Medical Mutual of Ohio*, 601 F.3d 505, 520 (6th Cir. 2010) (quoting *Foman,* 371 U.S. at 182). Moreover, "[a] proposed amendment is futile if the amendment could not withstand a Rule 12(b)(6) motion to

13

dismiss." *Rose v. Hartford Underwriters Ins. Co.*, 203 F.3d 417, 420 (6th Cir. 2000) (citing *Thiokol Corp. v. Dep't of Treasury, St. of Mich., Revenue Div.*, 987 F.2d 376, 382–83 (6th Cir. 1993)).

## II. <u>Analysis</u>

The Daees now seek to add claims to this action for libel of title, fraud, forgery, violation of the FDCPA, and intentional or negligent infliction of emotional distress. For the reasons discussed below, the court will not permit this amendment because none of these claims would survive a motion to dismiss under Rule 12(b)(6) and, therefore, the amendment would be futile.

The claims for fraud, libel of title, and forgery that the Daees seek to bring through their proposed Second Amended Complaint are all premised solely on the Daees' argument that Chase does not have a right to enforce the Note and, therefore, the Daees have been injured by Chase's enforcement actions. These claims cannot proceed for the simple fact that, as discussed above, Chase does, in fact, have the right to enforce the Note. Accordingly, the Daees cannot establish that Chase, in asserting its authority to enforce the note, made a *false representation* about the title to the Property that is an essential element of claims for fraud, libel of title, or slander of title under Tennessee law. *See Thompson v. Bank of America*, 773 F.3d 741, 754 (6th Cir. 2014) (libel or slander of title requires a false statement about the title to a property that "proximately caused the plaintiff a pecuniary loss"); *Walker v. Sunrise Pontiac-GMC Truck, Inc.*, 249 S.W.3d 301, 311 (Tenn. 2008) (fraud requires that: "1) the defendant made a representation of an existing or past fact; 2) the representation was false when made; 3) the representation was in regard to a material fact; 4) the false representation was made either knowingly or without belief in its truth or recklessly; 5) plaintiff reasonably relied on the misrepresented material fact; and 6) plaintiff suffered damage as a result of the misrepresentation.") Moreover, as the Daees

14

concede, there does not appear to be any legal basis for a private right of action for forgery under Tennessee law.[6]

Even assuming, as the Daees argue, that Chase made some false representations in the course of executing, recording, and relying during this litigation on the Assignment, the Endorsement, and/or the Cooley Allonge, this is not the proximate cause of any damages to the Daees. Irrespective of whether Chase acted with negligence, or even reckless indifference or malice,[7] in executing or relying on any of these documents to assert its right to enforce the Note, these actions ultimately did not result in any damages to the Daees beyond Chase's enforcement of the Note, which was authorized and would have taken place anyway.[8]

---

[6] The Daees cite only Tenn. Code Ann. § 39-14-114(a)(1) for the elements of a forgery claim, but this is a criminal statute. Alternatively, the Daees argue that Chase's forgery of the Cooley Allonge is a type of fraud that renders the Note unenforceable and discharges them of their obligations. The enforceability of the Note, however, was established at the time it was entered into by the parties. After having completed discovery and summary judgment on the question of whether Chase has the right to enforce the Note, the plaintiffs assert no legal basis to support the proposition that the subsequently created Cooley Allonge could have nullified the original obligations under the Note. Attempting to add a claim for forgery, or fraud based on forgery, does not disguise what is essentially the Daees' effort to reopen the question of whether Chase can enforce the Note and argue additional grounds against Chase's rights at this late stage of the litigation.

[7] In fact, Chase appears to admit that there was some type of misconduct, at least negligence, with respect to Chase's executing the Cooley Allonge, when it was admittedly not authorized to do so.

[8] The court recognizes one exception: misrepresentations by Chase about the significance of the Cooley Allonge during the course of this litigation led to additional damages to the Daees in the form of protracted discovery and additional filings in this matter, in order to confirm that there had been no effective transfer of the Note to Citibank. The Daees already recovered for these damages, however, through the court's earlier award of sanctions to cover their fees and costs for the additional steps in the litigation.

15

Likewise, to the extent that the Daees' emotional distress and FDCPA claims are based on Chase's enforcement of the Note alone, the claims cannot proceed because the court has established that Chase has the right to enforce the Note. *See DeSoto v. Board of Parks and Recreation*, 64 F.Supp.3d 1070, 1095-96 (M.D. Tenn. 2014) (Trauger J.) (intentional infliction of emotional distress requires intentional or reckless conduct "so outrageous that it is not tolerated by civil society" and results in serious mental injury, and negligent infliction of emotional distress requires the breach of a duty that proximately causes severe emotional injury.) (citing *Bain v. Wells*, 936 S.W.2d 618, 622 (Tenn. 1997) and *Rogers v. Louisville Land Co.*, 367 S.W.3d 196, 206 (Tenn. 2012)). To the extent that the Daees base their emotional distress claims on the *methods* used by Chase to collect on the Note (including unwanted calls and letters, entering the Property without permission, posting notices, and causing the Daees' tenants to move), however, the analysis is more complicated. The court finds, though, that the Daees have simply not alleged any actions by Chase so egregious, or any injury so severe, as to allow these claims to proceed. With respect to the Daees' claim for *intentional* infliction of emotional distress, the allegations that Chase made unwanted phone calls and sent unwanted letters, entered the Property, posted notices of foreclosure, and possibly caused property damage and lost rental payments to the Daees, do not constitute conduct so outrageous as to not be tolerated by civil society. DeSoto, 64 F.Supp.3d at 1095-96. Nor have the Daees alleged a serious or severe injury that would allow their *negligent* infliction of emotional distress claim to proceed. *See, e.g. Rye v. Women's Care Center of Memphis, MPLLC*, 477 S.W. 235, 270 (Tenn. 2015) (holding that a negligent infliction of emotional distress claim, without physical injury, requires a serious or severe mental injury, which occurs when "a reasonable person, normally constituted would

16

[have been] unable to adequately cope with the mental stress engendered by the circumstances of the case.")

With respect to the Daees' claim that Chase's pre-foreclosure tactics violate the FDCPA, this claim cannot proceed because the FDCPA does not apply to Chase, as Chase is the original lender and not a party that acquired the right to enforce the Note only after default. *See Bridge v. Ocwen Fed. Bank, FSB*, 681 F.3d 355 (6th Cir. 2012) (holding that FDCPA applies to *debt collectors* and not *creditors*, and that an original lender or other party who acquired the debt prior to default is a creditor not subject to the act). The Daees correctly cite *Glazer v. Chase Home Finance LLC* for the proposition that, in the Sixth Circuit, mortgage foreclosure qualifies as debt collection under FDCPA. 704 F.3d 453 (6th Cir. 2013.) The Daees overlook, however, that *Glazer* involved foreclosure by a *debt collector* – as defined under *Bridge* – rather than a creditor like Chase.

Finally, even if the Daees' emotional distress and FDCPA claims arising from Chase's pre-foreclosure tactics were not futile, the court would, in its discretion, anyway deny the motion to amend because these claims are unduly delayed, and allowing them to proceed at this point would be unfairly prejudicial to Chase. The Daees filed their Motion to Amend more than two years after the original petition was filed, after the completion of a lengthy discovery period, and just days before the final deadline for filing dispositive motions. The Daees were well aware of any claims they may have had that were associated with Chase's pre-foreclosure collection tactics from the time they initially filed this action, and there is no justification for the delay.

For these reasons, the court will deny the Daees' Motion to Amend.

## **CONCLUSION**

17

For the foregoing reasons, Chase's Motion for Summary Judgment will be granted. The Daees' Motion for Partial Summary Judgment and Motion to Amend will be denied.

An appropriate order will enter.

_____
ALETA A. TRAUGER
United States District Judge